UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WILLIAM DOUGLAS HAMPTON, ) | Case No.: 4:19 CV 1664 |
| Petitioner ) | JUDGE SOLOMON OLIVER, JR. |
| v. ) | |
| WARDEN MARK K. WILLIAMS, ) | |
| Respondent ) | MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

*Pro se* Petitioner William Douglas Hampton, presently incarcerated at FCI Elkton, brings this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Petitioner asks the court to grant him his constitutional right to a jury trial to defend himself against a charge of "fighting with another person" while incarcerated. (ECF No. 1).

For the reasons that follow, the Petition is denied.

## II. BACKGROUND

On November 23, 2018, Petitioner states that he was attacked by another inmate, Kenneth Bulholtz, in the typewriter section of the law library while incarcerated at FCI Seagoville. (ECF No. 1-2). When returning to his housing unit, Petitioner was stopped by a correctional officer who noticed that he had facial injuries, and he was taken to the medical department for evaluation and

then to the special housing unit ("SHU"). (ECF No. 1 at 1-2). Petitioner received a "201" incident report for fighting with another person and, on December 6, 2018, a disciplinary hearing was conducted before the Disciplinary Hearing Officer ("DHO").

Petitioner was found guilty of the charge and sanctioned: (1) seven days of disciplinary segregation, (2) twenty-seven Good Contact Days lost, and (3) sixty days of loss of commissary. (*Id*. at 2). Petitioner states that the above-described process is consistent with the Code of Federal Regulations and Bureau of Prisons ("BOP") policy "if guilt is valid." Petitioner claims that he was then sanctioned a second time when his case manager, Ms. Goen, increased his Custody Level Score and he was transferred to FCI Elkton. Petitioner claims that the staff at FCI Seagoville discriminated against him and showed favoritism to Bulholtz because Petitioner was transferred but Bulholtz was not. Petitioner states that he has exhausted his administrative remedies and now seeks habeas relief. (*Id*.).

Following the DHO hearing, Petitioner states he did not receive the DHO report until February 20, 2019. (*Id*. at 3). According to the Petition, he filed his appeal on March 11, 2019, but it was denied as untimely. (*Id*. at 5-6). Petitioner states the in denying his appeal as untimely, the Bureau of Prisons ("BOP") violated the prison mailbox rule because he deposited his appeal in the prison mailbox within the 20-day period for filing an appeal.

Petitioner claims that he was denied due process on multiple grounds,[1] including the BOP's denial of his appeal as untimely, the DHO's false statements about what constitutes a "fight," the FCI Seagoville staff treated him less favorably than the other inmate involved in the fight, and the FCI

---

[1] Petitioner's due process claims are wide-ranging and the court has grouped like claims together for analysis.

Seagoville staff's role generally in contributing to inmate fights.[2] For relief, Petitioner seeks to present his appeal of the DHO ruling in this court in the form of a jury trial where he will show that he is innocent, and upon such a finding, seeks dismissal of the incident report, return of his good conduct days, and reduction of his custody level score. (*Id*. at 7-10).

## II. STANDARD OF REVIEW

Writs of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting Section 2241(c)). Because Petitioner is appearing *pro se*, the allegations in his Petition must be construed in his favor, and his pleadings are held to a less stringent standard than those prepared by counsel. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, this Court may dismiss the Petition at any time, or make any such disposition as law and justice require, if it determines the Petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *see also Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (holding district courts have a duty to "screen out" petitions lacking merit on their face under 28 U.S.C. § 2243).

## III. DISCUSSION

### A. The Mailbox Rule

---

[2] Petitioner's claims regarding staffing at FCI Seagoville and the staff's alleged role in contributing to inmate fights because of an alleged "laissez-faire" attitude concerning aggressive conduct on the part of inmates (*see* ECF No. 1 at 7-8) do not rise to the level of a constitutional violation relevant to Petitioner's claims regarding loss of good conduct time.

-3-

Petitioner's first claim is that his administrative appeal was rejected as untimely in violation of the prison mailbox rule because he placed his appeal in the prison mail within the 20-day period for filing an appeal. The time for filing an appeal/administrative remedy is governed by 28 C.F.R. § 542.18, which provides that in the BOP's administrative remedy program, an appeal is considered "filed" on the date it is received. 28 C.F.R. § 542.18 ("If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received."). Some courts within and outside this circuit have concluded that the mailbox rule does not apply to BOP administrative remedy/appeal process because of the language of the regulation, BOP policy, and caselaw. *See Goddard v. Alexakos*, No. CV 5:16-215-KKC, 2018 WL 1168611, at *7 (E.D. Ky. Mar. 6, 2018) (28 C.F.R. § 542.18 "clearly provides" that an appeal is considered "filed" on the date it is received and, "[i]n the absence of clear, binding authority directing that the prison mail box applies in the administrative remedy/appeal process, the Court is reluctant to apply the rule in this case. This finding is also consistent with ... the BOP's internal regulations[.]") (citations omitted) (distinguishing *Cordoba v. Shartle*, 2010 WL 2572854 (N. D. Ohio 2010) and *Vasquez v. Shartle*, 2011 WL 1004934 (N.D. Ohio 2011) (mailbox rule does apply to administrative appeal) on the grounds that neither addressed the significance of 28 C.F.R. § 542.18's definition of the term "filed"); *see also Tucker v. Jones*, No. 2:17-CV-133, 2018 WL 3557462, at *5 (S.D. Ga. July 24, 2018) ("The "plain language of § 542.18 thwarts Tucker's attempt to rely upon the prison mailbox rule to cure the untimeliness of his BP-10 filing. The BOP's internal regulations also contradict application of the prison mailbox rule.") (collecting cases), report and recommendation adopted, No. 2:17-CV-133, 2018 WL 4688721 (S.D. Ga. Sept. 28, 2018).

Federal prisoners must ordinarily exhaust their administrative remedies before filing a § 2241

habeas corpus petition. *See Tejada v. Elkton*, No. 405CV0772, 2005 WL 1711979, at *2 (N.D. Ohio July 20, 2005) ("It is well established by case law that federal prisoners are required to exhaust administrative remedies before filing a habeas petition under 28 U.S.C. § 2241.") (collecting cases). To the extent that the mailbox rule does not apply to Petitioner's administrative appeal, his appeal was untimely and he has failed to exhaust his administrative remedies.

That said, the court will nevertheless consider the merits of his claims regarding the disciplinary process resulting in loss of good conduct time and other sanctions. *See Vasquez*, 2011 WL 1004934, at *3 (finding that the mailbox rule applied and petitioner timely submitted his appeal to the regional office within the twenty-day window although it was rejected as untimely, and considering the merits of petitioner's claims); *see also Linares v. Terris*, No. 17-11085, 2018 WL 1709027, at *3 (E.D. Mich. Apr. 9, 2018) (considering the merits of petitioner's § 2241 claim regarding loss of good conduct time where he attempted to pursue administrative remedies for his claims which were rejected for procedural reasons, including untimeliness) (citation omitted).

### B. Petitioner Received Due Process

Petitioner claims that he was denied due process because the FCI Seagoville staff discriminated against him by favoring Bulholtz with respect to the fighting incident (ECF No. 1 at 2), there was a delay in receiving the DHO report (ECF No. 1 at 8), and the DHO made false statements at the hearing regarding what constitutes a "fight" (ECF No. 1 at 9). Petitioner asks this court to rescind the incident report, restore his good time credit, and lower his security classification.

The court's ability to review prison disciplinary proceedings is limited and does not include providing Petitioner with a jury trial regarding the conduct that was the subject of those proceedings. District courts have no authority to review a disciplinary committee's resolution of factual disputes,

or to make a redetermination of an inmate's innocence or guilt. *Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill*, 472 U.S. 445, 455 (1985). The only question for the court to determine is whether the hearing complied with basic requirements due process requirements.

This standard is not a difficult one to meet. To comply with the requirements of the Due Process Clause, prison officials need only provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the fact finder as to the evidence relied upon and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1972).

Due process requires only that disciplinary findings resulting in the loss of good time credits be supported by "some evidence" in the record. *Superintendent, Massachusetts Correctional Institution at Wolpole*, 472 U.S. at 454-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. The DHO is not required to base findings on overwhelming or irrefutable proof of guilt. Even where the evidence is contradictory or partially exculpatory, a DHO may base a finding of guilt on only "some evidence" that indicates the prisoner is guilty. *Id*. at 457.

In this case, Petitioner received the incident report on November 23, 2018 and the disciplinary hearing was held on December 6, 2018. According to the DHO report, which Petitioner does not challenge, Petitioner was advised of his rights before the DHO by his case manager, Ms. Goen, on November 28, 2016. Petitioner requested and received a staff representative, and

Counselor R. Thompson appeared at the hearing. Thompson reported at the hearing that "I checked for other witnesses and none were found[,]" and Petitioner waived his right to witnesses. In addition to the incident report and investigation, the DHO considered "[t]hree photo sheets pertaining to Hampton and Bulholtz, dated November 23, 2018, ][and] Clinical encounter injury assessments pertaining to inmates Hampton and Bulholtz, dated November 23, 2018." At the hearing, Petitioner made a statement denying the charges and stating: "I said there was a verbal altercation. I was attacked. I wasn't fighting." (ECF No. 1-2 at 1). The DHO's report provides a lengthy statement regarding the evidence relied upon and the reason for his determination that Petitioner was guilty of fighting. (*Id*. at 2).

Here, all of the requirements of *Wolff* were satisfied and there is "some evidence" to support the DHO's finding that Petitioner was guilty of fighting. Petitioner does not maintain that he did not receive sufficient notice or did not have an opportunity to call witnesses. Indeed, Petitioner acknowledges that the above-described process is consistent with federal regulations and BOP policy "if guilt is valid." (ECF No. 1 at 2). Petitioner disagrees with the DHO's determination as to what constitutes a "fight" (ECF No. 1 at 9), but his disagreement with factual issues and finding of guilt does not demonstrate he was denied due process. And his claim that several weeks elapsed before he received the DHO report does not rise to the level of a constitutional violation as to the DHO hearing.

With respect to his discrimination claim, Petitioner does not identify the nature of the alleged discrimination or that he is a member of a protected class – he only states that Bulholtz was treated more favorably than he was. (ECF No. 1 at 2-3). To the extent that Petitioner is attempting to assert an equal protection claim, Petitioner's allegations are insufficient to demonstrate that he was treated

differently from others similarly situated and such treatment was not rationally related to a legitimate government interest. *Vasquez,* 2011 WL 1004934, at *6 (Petitioner's claim that he was treated less favorably than others because he was "disliked" is insufficient to state an equal protection claim that he was treated differently from others similarly situated unrelated to a legitimate government interest.) (citations omitted). Petitioner fails to allege a constitutional violation regarding discriminatory treatment.

## IV. CONCLUSION

For all of the foregoing reasons, the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 is denied and this action is hereby dismissed pursuant to 28 U.S.C. § 2243. Petitioner's motion for a status update (ECF No. 3) is moot and denied as such.

The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be good faith.[3]

IT IS SO ORDERED.    /s/ Solomon Oliver, Jr.
    UNITED STATES DISTRICT JUDGE

December 31, 2019

---

[3] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.